IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| LISA GERMUNDSON,<br><br>Plaintiff,<br><br>vs.<br><br>ARMOUR-ECKRICH MEATS, L.L.C., and SMITHFIELD FOODS, INC.<br><br>Defendants. | No. C16-3103-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This case is before me on a motion (Doc. No. 9) to dismiss and, alternatively, a motion for summary judgment by defendants Armour-Eckrich Meats, L.L.C. (AEM), and Smithfield Foods, Inc. (Smithfield). Plaintiff Lisa Germundson (Germundson) has filed a resistance (Doc. No. 11) and defendants have filed a reply (Doc. No. 12). On April 25, 2017, I ordered additional briefing concerning the impact, if any, of a regulation set forth at 29 C.F.R. § 785.43. The parties have now submitted their supplemental briefs. *See* Doc. Nos. 24, 25 and 31. I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c).

## II. BACKGROUND

### A. *Procedural Background*

In a state court petition, Germundson asserted that the defendants interfered with her right to take leave pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2612-2615, when she missed work to stay with her hospitalized adult son. Doc. No.

3 at 4-5. Defendants removed the action to this court based on federal question jurisdiction. Doc. No. 1. They then filed this pre-answer motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the alternative, they move for summary judgment pursuant to Rule 56.

### B.     Factual Background

In considering defendants' motion to dismiss, I must accept the facts alleged in Germundson's petition as true. *See, e.g., Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)). For purposes of defendants' alternative summary judgment motion, I must also consider whether the undisputed facts demonstrate that defendants are entitled to judgment as a matter of law.

Smithfield owns AEM. Defendants operate a lunchmeat and boneless ham production plant in Mason City, Iowa. In June 2013, defendants hired Germundson as a general laborer in their Mason City facility. Defendants maintain an attendance policy that dictates certain punishments when employees have attendance "occurrences."

In late 2013, Germundson injured her shoulder at work. Subsequently, she took FMLA leave because of that injury. In February 2014, Germundson used approximately five weeks of leave for surgery on her shoulder. In July 2015, she took approximately five additional weeks of leave for a second shoulder surgery.

On August 11, 2015, Germundson left work early after informing defendants that she needed to leave early because her shoulder was swollen and she was in pain. Human Resources scheduled an appointment for Germundson to see the defendants' workers' compensation physician the next day. Defendants assessed a point against Germundson under their attendance policy for leaving work early on August 11. Defendants also gave Germundson a "Final Warning" due to her August 11 absence.

2

On October 24, 2015, Germundson's adult son was shot in the stomach and admitted to a hospital intensive care unit. Germundson found out about her son's injuries and hospitalization in the middle of the night and immediately went to the hospital. She called the Mason City plant repeatedly between 3:00 a.m. and 5:00 a.m. on October 25, but no one answered. As a result, Germundson continued trying to reach someone at the facility and left messages that she could not come to work because of her son's condition. At 8:00 a.m., Germundson spoke with Human Resources Manager Jacque Huesman. She told Huesman that her son had been shot, that he was in surgery and that she was at the hospital with him. Germundson also told Huesman that the nurses had told her things "did not look good." Germundson told Huesman that she knew she was high on attendance "occurrences" but asked if she could use leave to care for her son. Huesman told Germundson she would have to call her back.

An hour later, Huesman called Germundson and explained that she could not use leave because her son was over 18 years old and was not disabled. Germundson told Huesman that she could not leave her son and asked if there was anything she could do to keep her job. Huesman stated: "You could come in for half a day and I'll give you half an occurrence." Germundson told Huesman she was not going to leave her son. Huesman responded that if Germundson did not report to work that day, she would reach seven occurrences and defendants would fire her. Germundson stayed with her son at the hospital and was fired on October 25, 2015.

Germundson's son remained in the intensive care unit for four days. He was unable to care for himself while in the hospital and required Germundson's assistance for several weeks after being discharged.

### III. ANALYSIS

#### A. Standards for Rule 12(b)(1) Motions

Rule 12(b)(1) provides for a pre-answer motion to dismiss "for lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). As the Eighth Circuit Court of Appeals has explained:

> "The existence of subject-matter jurisdiction is a question of law that this court reviews de novo." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). The party seeking to invoke federal jurisdiction . . . carries the burden, which may not be shifted to another party. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

*Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013); *accord Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 961 (8th Cir. 2014) (review is *de novo*). Dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may be permissible on the basis of a defense or exception to jurisdiction. *See, e.g., Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013).

Where a party limits its attack to the face of the complaint, the attack is a "facial challenge" to subject matter jurisdiction. *Jones*, 727 F.3d at 846 (citing *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002)). On a "facial challenge," "'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Those protections include treating the complainant's factual allegations as true and dismissing only if it appears beyond doubt that the complainant can prove no set of facts in support of its claim that would entitle it to relief. *Osborn*, 918 F.2d at 729 & n.6.

By contrast, on a "factual challenge," where – as here – a party makes a factual challenge to the district court's jurisdiction pursuant to Rule 12(b)(1), "'no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of the

4

jurisdictional claims.'" *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729–30 & n. 6). Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the *issue to determine whether in fact subject matter jurisdiction exists.*'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (emphases added) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004). A plaintiff carries the burden of establishing subject matter jurisdiction. *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006); *Hoekel v. Plumbing Planning Corp.*, 20 F.3d 839, 840 (8th Cir. 1994) (per curiam), *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989).

### B.    Overview of the FMLA

The FMLA was created to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1). The FMLA "entitles eligible employees to take a total of twelve weeks of leave during a twelve-month period due to 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)); *see Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 898 (8th Cir. 2010); *Estrada v. Cypress Semiconductor (Minnesota), Inc.*, 616 F.3d 866, 871 (8th Cir. 2010); *Scobey v. Nucor Steel–Ark.*, 580 F.3d 781, 785 (8th Cir. 2009); *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 471 (8th Cir. 2007).

Under the FMLA, a "serious health condition" is defined as "any 'illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.' " *Murphy*, 618 F.3d at 898 (quoting 29 U.S.C. § 2611(11)); *see Scobey*, 580 F.3d at 785; *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008).

Because the FMLA grants valuable leave and restoration rights to eligible employees, it also secures these rights against unlawful infringement by prohibiting employers from discriminating against employees for exercising their rights to take FMLA leave. *See Rask*, 509 F.3d at 471; *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). Thus, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). It is also "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). In considering the various claims that may arise under these provisions, the Eighth Circuit Court of Appeals has stated:

> We have recognized three types of claims arising under two subsections of the FMLA dealing with prohibited acts, 29 U.S.C. § 2615(a)(1), (a)(2):
>
> (1) "entitlement" claims, see *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012), or "interference" claims, arising under § 2615(a)(1);[1]
>
> (2) "retaliation" claims, arising under § 2615(a)(2), *see Pulczinski*, 691 F.3d at 1005–06; *Lovland v. Emp'rs Mut. Cas. Co.*, 674 F.3d 806, 811 (8th Cir. 2012); and
>
> (3) "discrimination" claims, arising under § 2615(a)(1), *see Pulczinski*, 691 F.3d at 1006; *cf. Lovland*, 674 F.3d at 811.

---

[1] While the Eighth Circuit uses "entitlement" and "interference" interchangeably when referring to this first type of FMLA claim, I will use "interference" throughout this order.

*Brown v. City of Jacksonville*, 711 F.3d 883, 890-91 (8th Cir. 2013). The first type of claim (interference) arises when "an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." *Pulczinski*, 691 F.3d at 1005. A retaliation claim arises when an employee opposes a practice that is unlawful under the FMLA and the employer takes adverse action against the employee because of the employee's opposition. *Id*. at 1005-06. A discrimination claim arises "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Id*. at 1006.

A significant difference between an interference claim and the other two types of claims is that an interference claim "merely requires proof that the employer denied the employee his entitlements under the FMLA." *Stallings*, 447 F.3d at 1051. The other claims require "proof of the employer's discriminatory intent." *Brown*, 711 F.3d at 891. That proof "may come from direct evidence or indirect evidence using the *McDonnell Douglas* burden-shifting framework. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973)). However, because proof of the employer's motivation is not necessary to support an interference claim, Eighth Circuit has specifically rejected using the *McDonnell Douglas* framework when analyzing such a claim. *See Stallings*, 447 F.3d at 1051 n.3; *Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001). As the court explained in *Stallings*:

> In an interference claim, an "employee must show only that he or she was entitled to the benefit denied." *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003) (stating that the burden to establish an interference claim is less than that of a retaliation claim, which requires a showing that the employer's actions were motivated by an impermissible retaliatory animus). This court has recognized that an employee can prove interference with an FMLA right regardless of the employer's intent. *Throneberry [v. McGehee Desha County Hosp.]*, 403 F.3d [972,] 979 [(8th Cir. 2005)]. An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave. *Id*. "[E]very discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights. However,

7

> the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." *Id.* at 980 (emphasis added). Thus, where an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery. *Id.* at 979 (holding that strict liability does not apply to an (a)(1) claim).

*Stallings*, 447 F.3d at 1051 (footnote omitted). With this in mind, I turn to Germundson's FMLA interference claim.

### 1. *The elements of the interference claim*

Under the FMLA, "[a]n employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise of any right contained in the FMLA." *Stallings*, 447 F.3d at 1050 (citing 29 U.S.C. § 2615(a)(1)).

> Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." An employer's action that deters an employee from participating in protected activities constitutes an "interference" or "restraint" of the employee's exercise of his rights.

*Id.* (citations omitted). In order to establish her interference claim, Germundson must prove each of the following five elements:

1. Germundson was an "eligible employee;"
2. Defendants were an "employer;"
3. Germundson was entitled to FMLA leave;
4. Germundson gave defendants notice of her intent to take FMLA leave; and
5. Defendants denied Germundson FMLA benefits to which she was entitled.

*See Beekman v. Nestle Purina Petcare Co.,* 635 F. Supp.2d 893, 909 (N.D. Iowa 2009) (quoting *Schoonover v. ADM Corn Processing*, No. 06-CV-133-LRR, 2008 WL 282343, at *12 (N.D. Iowa Jan. 31, 2008)); *Beatty v. Custom–Pak, Inc.*, 624 F. Supp. 2d 1045, 1052 (S.D. Iowa 2009).

8

### 2. *Germundson's entitlement to FMLA leave*

Here, defendants argue that the court lacks subject matter jurisdiction because Germundson was not an "eligible employee." Under the FMLA, an "eligible employee" is one who has been employed (a) "for at least 12 months by the employer" and (b) "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Defendants argue that although they employed Germundson for over twelve months, she did not work at least 1,250 hours during the previous 12-month period.

"[W]hether an employee has worked the minimum 1,250 hours of service is determined according to the principles established under the Fair Labor Standards Act [(FLSA)] for determining compensable hours of work." 29 C.F.R. § 815.110(c)(1) (citing 29 C.F.R. part 785). The regulation states:

> The determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA. The determination is not limited by methods of recordkeeping, or by compensation agreements that do not accurately reflect all of the hours an employee has worked for or been in service to the employer. Any accurate accounting of actual hours worked under FLSA's principles may be used.

*Id.* Defendants assert that on October 26, 2015, Germundson had only worked 1,209.6 hours in the preceding 12 months.[2] Germundson contends that defendants miscalculated and that she actually worked 1,250.4 hours between October 26, 2014, and October 26, 2015.

---

[2] Defendants submit a Time Detail report from October 27, 2014, through October 26, 2015, showing that Germundson has a total cumulative amount of 1,320.7 hours. *See* Doc. No. 9-2 at 5-21. However, these hours include paid holidays and vacations, as well as other hours defendants argue do not count for FMLA eligibility purposes. Defendants rely on a Pay Code Summary showing that Germundson worked 1,209.6 "regular hours." *Id.* at 23. They contend that the other hours codes and hours listed are not additional hours worked, but components of the 1,209.6 "regular hours," such as holiday hours (56), vacation hours (40) and floating holidays (16). *Id.* at 2.

9

The first discrepancy between the parties' calculations concerns Germundson's "punch-in" or clock-in time in the records. In accordance with their collective bargaining agreement, defendants' employees at the plant are permitted to punch in up to 15 minutes prior to the start of their shifts. However, they are not permitted to start working until the beginning of their shifts, when they are required to be at their work stations.[3] Under the FLSA, "where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded." 29 C.F.R. § 785.48(a).

Germundson has not pointed to anything in the record establishing that she was paid for the periods between her clock-in and clock-out times and the beginning and end of each scheduled shift or that she worked during these periods. Defendants have submitted a Time Detail report showing her clock-in and clock-out times and the total hours worked. These are not always consistent. For instance, the report shows Germundson worked only four hours on December 12, 2014, even though her clock in time (1:17 p.m.) and clock out time (5:29 p.m.) indicate she was on the clock four hours and 12 minutes (or 4.2 hours). Based on 29 C.F.R. § 785.48, defendants are required to pay only for the time Germundson was working. Moreover, company policy prohibited employees from working beyond their scheduled shifts. *See* Doc. No. 12-1 at

---

[3] Payroll Specialist Micki Flota explains in a declaration:

> For convenience, employees at the Mason City plant are permitted to punch in up to 15 minutes prior to the start of their scheduled shifts. However, they are not supposed to start work until the scheduled start time for their shifts. Therefore, their paid work hours are calculated from the start of the shift until the time they punch out at the end of the shift. If an employee actually begins working before the start time of the shift, his or her supervisor will make a note of this and I will adjust the scheduled start time for that day to ensure they are properly paid for their time.

Doc. No. 12-1 at 1-2, ¶ 3.

1-2, ¶ 3. Therefore, Germundson's calculated hours based strictly on the clock in/clock out times do not count toward the requisite 1,250 hours. Instead, only the number of hours actually worked may be counted.

The second discrepancy involves half-hour meal breaks that were automatically deducted from hours worked. Germundson attests she worked through meal breaks on eight out of ten days in mid to late September when she was training to obtain her forklift license. *See* Doc. No. 11-2. Under 29 C.F.R. § 785.19, meal times may be considered "hours worked" if the employee worked through the meal period. Therefore, Germundson contends at least four hours should be added to defendants' calculation of hours worked. For purposes of this motion, I will accept this allegation as true, even though Huesman states that Germundson did not follow the correct procedure for notifying the Payroll Specialist of these additional hours worked. That brings the total number of hours worked up to 1,213.6.

The final discrepancy between the parties' calculations involves hours Germundson spent at (or traveling to and from) medical appointments during the twelve months prior to her discharge. Defendants contend these hours do not count as hours worked for FMLA purposes. *See* Doc. No. 12 (citing DOL Fact sheets at https://www.dol.gov/whd/flsa/faq.htm and https://www.dol.gov/whd/fmla/fmla-faqs.htm, stating that "[t]he 1,250 hours include only those hours actually worked for the employer. Paid leave and unpaid leave, including FMLA leave, are not included."). However, under the FLSA, "[t]ime spent by an employee in waiting for and receiving medical attention on the premises or at the direction of the employer during the employee's normal working hours on days when he is working constitutes hours worked." 29 C.F.R. § 785.43; *see also Copeland v. ABB, Inc.*, 521 F.3d 1010, 1012-14 (8th Cir. 2008) (concluding that hours missed to attend doctor's appointment arranged by employer's worker's compensation administrator constituted "hours worked" under the FLSA).

11

There are three types of "medical appointment" hours at issue here:

1. Hours during which Germundson left work to attend medical appointments related to her work injury (the "During Work Hours" appointments).

2. Hours during which Germundson attended medical appointments on work days, but not during her normal working hours (the "During Non-Work Hours" appointments).

3. Hours during which Germundson attended medical appointments while on medical leave, and therefore was not working (the "During Medical Leave" appointments).

I will address each type of appointments separately.

***During Work Hours.*** Defendants state that Germundson was paid for 115.7 hours under defendants' workers compensation policy when she left work to attend medical appointments related to her work injury. *See* Doc. No. 12-1 at 4, 23. These hours are already included in the total 1,209.6 "regular hours" reflected in defendants' reports. *Id.* Pursuant to 29 C.F.R. § 785.43, these hours are properly treated as hours worked, so the total amount (after adding the four hours addressed above) is appropriately reflected as 1,213.6 hours.

***During Non-Work Hours.*** The second set of medical appointment hours is reflected in plaintiff's Exhibit 4, which lists various hours Germundson attended (or traveled to and from) medical appointments on both working and non-working days. *See* Doc. No. 25-2 (calculating 56.87 hours spent at appointments and traveling to and from the appointments). The majority of the workday appointments occurred prior to Germundson's scheduled workday and did not occur "during [her] normal working hours on days when [s]he [was] working." *See* 20 C.F.R. § 785.43. Meanwhile, the appointments that did occur during her regular work hours, on days when she was working, are already included in the 115.7 hours mentioned above. *See* Doc. No. 12-1 at 4, 23. As such, none of the hours set forth in Exhibit 4 are properly added to the total hours worked of 1,213.6. The non-workday appointments are discussed below.

12

***During Medical Leave***. The final type of medical appointment hours are those that occurred from February 19, 2015, through April 2, 2015, the period of time during which Germundson was unable to work due to shoulder surgery and the resulting recovery. These hours are reflected in plaintiff's Exhibit 5. *See* Doc. No. 25-3 (calculating 32.32 hours spent at the appointments and traveling to and from those appointments). They are also included in plaintiff's Exhibit 4 (Doc. No. 25-2). Germundson argues that the medical appointments she attended between February 19, 2015, and April 2, 2015 (along with her travel time to and from the appointments), were "at the direction of [her] employer" and should count toward the 1,250-hour requirement. Defendants state that Germundson was on full workers compensation leave and did not come to work during this period. *See* Doc. No. 31-2 at 2. As such, they argue these hours cannot count toward the 1,250-hour requirement.

Defendants are correct. *See* 29 C.F.R. § 785.43 ("[t]ime spent by an employee in waiting for and receiving medical attention . . . at the direction of the employer during the employee's normal working hours on days *when he is working* constitutes hours worked") (emphasis added). Thus, the hours Germundson devoted to medical appointments during the time she was on medical leave, and thus not working, do not count toward the 1,250-hour requirement. Of course, even if they did, I have already found that the total hours worked without regard to these "During Medical Leave" hours is 1,213.6. Adding 32.32 hours to that amount would still leave Germundson more than four hours short of the 1,250 threshold.

Based on this analysis, Germundson was not an "eligible employee" on October 26, 2015, as she had not worked at least 1,250 hours during the previous 12-month period. Because Germundson cannot establish an essential element of her FMLA interference claim, that claim fails as a matter of law.

13

## IV.   CONCLUSION

For the reasons provided herein, defendants' motion (Doc. No. 9) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and motion for summary judgment pursuant to Federal Rule of Civil Procedure are both **granted.**  This case is hereby **dismissed**.  Judgment shall enter in favor of defendants.

**IT IS SO ORDERED.**

**DATED** this 17th day of August, 2017.

_____
Leonard T. Strand, Chief Judge